Reads J.
 

 The powers and duties of this court and of the -Judges of the Superior Court seem to have been misconstrued in the exceptions rvhich bring this case before us. ■“Men of ability, integrity and learned in the law” are commissioned to hold the Superior Courts, and for “wilfully vio
 
 *443
 
 lating any article of the constitution, maladministration or corruption,” they may be impeached by the legislature and indicted in the courts. And the office of this court is to “hear and determine all questions of law” and “all cases in equity” brought before it from the Superior Courts. It is not within the province of this court to supervise the mere behavior of the judge below, or his manner oí holding his court, or to criticise his remarks to the bystanders, or to prescribe what morals he shall inculcate. Mere proprieties are entrusted to him only. They are not matters of science, and are not prescribed by any authority. It is only where the party’s legal rights have been prejudiced in the court below that this court can interfere. For illustration, it may be said that the prisoner had the legal right to have both of the jurors, who were challenged,* rejected; and, if his Honor-had refused to reject them, it would have been an error which we could correct; but, the
 
 manner
 
 of rejecting them, or the temper, or propriety of any remarks in regard to the persons rejected, cannot be reviewed by us. And this is decisive of the case, as it is stated that there was no exception to his Honor’s charge.
 

 It we were to say no more, it might be supposed, to the prejudice of his Honor, that we had sustained, only because we had not the power to overrule him. Such is not the fact. The privileges, not to say the duties, of the learned and good men who administer the law among the people, go very far beyond the mere formal declaration of what the law is. They must show its justice, and make it -popular. They must not only punish crime, but denounce and make it odious. They must not only rebuke vice, but praise virtue. They must be ensamples as well of good men as of great judges. These qualities of our judges, and these influences in our courts, have made them palladiums, in which the people trust more than in armies.
 

 
 *444
 
 When the two mei^ who were rejected as jurors, vaunted their depravity, it would have been a shame if his Honor had not rebuked it. And, but for some good reason which does not appear to us, it would have been proper to punish it severely, if any punishment could be more severe than the scorn which must pursue the depravity that would take life against the law and the evidence.
 

 That there might have been others of the jurors of like temper towards the prisoner, who were deterred from expressing it by reason of the rebuke of those two rejected jurors, is a remote possibility. The legitimate effect of his Honor’s remarks was to impress upon all who heard them that the prisoner was entitled to a fair and impartial trial, according to the law and evidence; and that it would be perjury in any juror to deny him such a trial. After the jury was impannelled, like remarks by the judge in his charge to them could not have been complained of by the prisoner. Much less could he complain when the remarks were made to all, before they were impannelled, thereby not only rightly disposing of the jury, but tempering the outside pressure, which is felt like the wind. It is a pleasure to know that our courts yield nothing to the prejudice of classes; and* that they take the most care where there is the greatest, danger; and, are most humane where there is the greatest dependence.
 

 The prisoner has been deprived of no right to which he was entitled, and therefore .the verdict must stand.
 

 There is no error. This will be certified to the court below, to the end that such proceedings may be had as the law directs.
 

 Per Curiam. Ordered accordingly.